Frank D. Mylar (5116)
Jared W. Rigby (12380)
Mylar Law, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
office@mylarlaw.com

Attorneys for Duchesne County Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THE ESTATE OF MADISON JODY JENSEN, by her personal representative Jared Jensen, <br><br> Plaintiffs, <br><br> v. <br><br> DUCHESNE COUNTY, a Utah governmental entity, et al., <br><br> Defendants. | **DUCHESNE COUNTY DEFENDANTS' SUPPLEMENTAL MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Case No. 2:17-CV-01031-DBB-DAO <br><br> Judge David Barlow |

Defendants Jana Clyde and Duchesne County ("Defendants"), through their attorneys Frank D. Mylar and Jared W. Rigby, respectfully submit this memorandum in support of their Motion for Judgment as a Matter of Law in a Jury Trial.

## GROUNDS FOR MOTION

Federal Rule of Civil Procedure Rule 50(a), Judgment as a Matter of Law states:

> (1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

In *Eisenhour v. Weber Cty.*, 897 F.3d 1272 (10th Cir. 2018), the Tenth Circuit considered whether the district court erred by granting Judge Storey's judgment as a matter of law as to liability for Court Administrator Eisenhour's lost wages, which resulted from closure of the Weber County Justice Court. The Tenth Circuit stated "[t]o be sure, there was evidence that could support finding a chain of causation from the sexual harassment by Storey to the closure of the Justice Court. But Storey is liable only for damages *proximately* caused by his violation of Eisenhour's rights." *Id*. at 1280. The Court added "[a]lthough proximate cause is ordinarily a question of fact for the jury, it becomes a question of law for a court to decide when no evidence supports proximate causation." *Id*.

## STATEMENT OF FACTS

At trial, it was undisputed that Madison Jensen ("Plaintiff") was booked into the Duchesne County Jail on Sunday, November 27, 2016, at 5:12 p.m., that Plaintiff was not feeling well during her stay at the jail, and that Plaintiff told Defendants "I know my body and it is not detoxing I am completely detox. My roommate caught the stomach bug to from me." (Plaintiff's Trial Ex. 11.)

It was undisputed that Licensed Practical Nurse ("LPN") Jana Clyde met with Plaintiff within 24 hours of being booked, a second time within 48 hours, and a third time within 72 hours. In addition, there was no dispute that the Defendants called their contract-physician's assistant in order to approve and dispense Plaintiff's clonidine prescription, and provided food, water and Gatorade to Plaintiff.

At trial, it was undisputed the Plaintiff was found deceased on Thursday, December 1, 2016 at 1:28 p.m., within 48 hours of being booked into jail, and that the autopsy showed Plaintiff's probable death to be cardiac arrhythmia due to dehydration and opiate withdrawal. Moreover, it was undisputed that staff at the Duchesne County Jail was aware of and had experience in treating alcohol withdrawal and general illicit drug withdrawal. However, there was also no dispute that prior to Plaintiff's heroin-withdrawal death in 2016, there had been no such deaths in the Duchesne County, or any county jail or prison in Utah or Wyoming. Additionally, there was no dispute that Defendants knew heroin-withdrawal could be fatal.

Importantly, at trial there was no evidence presented of evil motive or intent on the part of Defendants, nor was there evidence alleging Defendants' violated individuals' constitutional rights in an incident prior to Plaintiff's claim. Moreover, Plaintiff presented no evidence that Defendants failed to take any action in providing medical treatment.

## ARGUMENT

I. **Plaintiff Has Not Presented Legally Sufficient Evidence for a Reasonable Jury to Return a Verdict for Plaintiff and Against LPN Clyde**

In considering the foregoing Statement of Facts, including LPN's Jana Clyde's actions in providing medical treatment to Plaintiff, LPN Clyde was not, as a matter of law, deliberately indifferent to Plaintiff's serious medical needs.

*Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022 (10th Cir. 2020), was a heroin withdrawal case where Plaintiff Ortiz was arrested and booked into an adult detention center in January 2016. After booking, the Defendant Nurse conducted a medical intake exam, but did not complete some of the intake forms. During the exam, the nurse determined Ortiz was heroin-

dependent and would most likely experience withdrawal. The nurse therefore offered Ortiz medications known as a "kick kit." However, the plaintiffs allege the kick kit was not administered.

Other defendants supervised or interacted with Ortiz between his medical exam on January 4 and his death on January 7. Each admitted being aware that Ortiz was experiencing heroin withdrawal symptoms. Ortiz did not request any further treatment and Ortiz was ultimately found unresponsive in his cell. Attempts to revive him were unsuccessful. At the autopsy, the Medical Examiner concluded that Ortiz "died of an acute gastrointestinal hemorrhage due to probable heroin withdrawal." *Id*. at 1027 (*quoting* App., Vol. 1 at 34).

The *Quintana* court acknowledged that an Eighth Amendment inquiry into whether a Defendant was deliberately indifferent to the serious medical needs of a pre-trial detainee was a two-part analysis, both objective and subjective. *Id.*; (*e.g., Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (*citing Garcia v. Salt Lke Cty.*, 768 F.2d 303, 307 (10th Cir. 1985)).

The Plaintiff has argued that *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1155 (10th Cir. 2022) is controlling law for the Court in regards to the objective element. However, the facts in *Paugh* are significantly different from those at bar, so we analyze the objective prong of *Paugh* before turning to the *Quintana* analysis.

In *Paugh*, the Court held that "death qualifies as a 'substantial harm' that satisfies the objective component," when Plaintiff was seen by a physician, the physician provided discharge instructions, and Plaintiff's observable symptoms thereafter "constituted such an obvious need for medical treatment that a reasonable jury could infer deliberate indifference in failing to follow those instructions." *Id*. at 1154; *see also id.* at 1155 (*citing Prince v. Sheriff of Carter Cnty.*, 28

F.4th 1033, 1045 (10th Cir. 2022)). The Paugh Court held these facts were key is satisfying the objective standard. *Id*. at 1157.

Here, Plaintiff presented no evidence at trial that Defendants were aware of a physician's discharge orders at the time Plaintiff was in jail. In fact it was not until after Plaintiff's death that the parties learned Plaintiff was seen by an emergency department physician several days prior to being incarcerated. The attending physician's discharge instructions were to take the prescribed clonidine prescription and follow-up with medical. (Defendant's Trial Ex. 1008.) It was undisputed at trial that Defendants provided the clonidine prescription and followed up was performed by LPN Clyde. In addition, Defendants scheduled Plaintiff to be seen by P.A. Clark within 48 hours of requesting such. Therefore, the *Paugh* holding as to death satisfying the objective prong does not apply here because Plaintiff presented no evidence at trial the Defendants were aware of a physician's discharge orders prior to Plaintiff's death. If Plaintiff had argued such, we contend Defendants followed all of the physician's discharge instructions, so the *Paugh* holding would continue to not be controlling law here.

Returning to analysis of the subjective prong of *Quintana*, LPN Clyde was not deliberately indifferent to Plaintiff's serious medical needs because there was no dispute that LPN Clyde called P.A. Clark to get Plaintiff's clonidine prescription approved and dispensed. In addition, LPN Clyde visited the Plaintiff in the jail medical room with 24 hours and again within 48 hours of being booked into jail. Moreover, LPN Clyde spoke with Plaintiff about her health and observed her walked into and out of her office on her own power both days. When LPN Clyde asked the Plaintiff about the possibility she was experiencing heroin withdrawal, Plaintiff insisted she knew her body, she was not detoxing, and she had completely detoxed. The Plaintiff said she contracted the flu

from her roommate. Despite the Plaintiff's statements about having the flu, LPN Clyde gave Plaintiff Gatorade, which provides needed electrolytes for those withdrawing from heroin or otherwise experiencing flu symptoms, placed the Plaintiff's name on the Control Room's sick-call list so P.A. Clark could meet with her, and checked on the Plaintiff in her cell within 72 hours of being booked. All of these facts were undisputed at trial.

In *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), the Plaintiff claimed the Defendants, which consisted of two LPNs, a registered nurse ("R.N."), and a medical doctor ("M.D."), were deliberately indifferent to Plaintiff's chest pains, which ultimately developed into a heart attack. The court held that because the Plaintiff presented evidence that she suffered severe pain for several days, and expert evidence that she ultimately suffered a heart attack, the Plaintiff established the objective element of the deliberate indifference test. *Id*. at 752.

In regards to the subjective element, the *Mata* court held that LPN #1 knew about Plaintiff's complaints of chest pain and told the Plaintiff there was nothing she could do for her since the infirmary was closed. Therefore, the court held LPN #1 disregarded a substantial risk to the inmate's health. *Id*.

In addition, the *Mata* Court held the R.N. fulfilled her gatekeeper duty by reporting the inmate's symptoms to the Nurse Practitioner ("N.P."). The N.P. fulfilled her gatekeeper duty by faxing the inmate's EKG printout to a medical doctor. *Id*.

Moreover, the *Mata* Court held LPN #2 was not deliberately indifferent because she subjectively believed the inmate's chest pain was relieved and was not experiencing a heart attack. Importantly, the inmate stated she was going to be okay and did not need a physician. *Id*.

Here, LPN Clyde called P.A. Clark and informed him of the Plaintiff's clonidine medication. Within 24 hours of entering the jail, LPN Clyde met with the Plaintiff and learned she had vomited and diarrhea. Within 48 hours, LPN Clyde met again with Plaintiff to determine the status of Plaintiff's symptoms. Within 72 hours, LPN Clyde met with Plaintiff a third time and upon hearing the symptoms continued, and informed the Plaintiff the P.A. would likely see her the next day. LPN Clyde instructed Plaintiff to submit a medical request to see the P.A. that day. All of these actions taken by LPN Clyde were undisputed at trial.

In each interaction with LPN Clyde, the Plaintiff was emphatic she knew her body and she was not detoxing; she insisted she had the flu, contracted from her roommate. Despite Plaintiff's insistence she was not detoxing, LPN Clyde provided the Plaintiff with Gatorade to ensure against dehydration. In addition, the Plaintiff was in a cell that had running water, a toilet and corrections officers checked on her once per hour, as part of their regular security checks. These facts were not in dispute at trial.

*Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000), is a case wherein the inmate-plaintiff experienced a heart attack, not heroin withdrawal, and the Plaintiff alleged at summary judgment Defendant was deliberately indifferent to his medical condition. In *Jensen*, the motion at issue is judgment as matter of law at trial, not summary judgment, and therefore not controlling.

However, in the event the Court would continue analysis, we continue with relevant facts. In *Sealock*, a corrections officer saw Plaintiff sweating so much his clothes and bedding were soaked. The officer also saw Plaintiff was actively vomiting and appeared very pale. Importantly, the Plaintiff told the officer he had a crushing pain in his chest, trouble breathing and had been vomiting all night. The officer told Plaintiff a nurse would be in about 6:00 a.m. About an hour

later, the Plaintiff asked her roommate to call for an officer again and the roommate told the Shift Commander the Plaintiff was having a heart attack.

Here, LPN Clyde was not deliberately indifferent to Plaintiff's serious medical need because she called P.A. Clark to get Plaintiff's clonidine prescription approved and dispensed. LPN Clyde visited the Plaintiff in the jail medical room within 24 hours of Plaintiff being booked and again within 48 hours of being booked. LPN Clyde spoke with Plaintiff about her health and observed her walked into and out of her office on her own power both days. When LPN Clyde asked the Plaintiff about the possibility she was experiencing heroin withdrawal, Plaintiff insisted she knew her body and she was not detoxing. The Plaintiff said she received the flu from her roommate, but in an abundance of caution LPN Clyde provided Gatorade, which provides needed electrolytes for those withdrawing from heroin, placed the Plaintiff's name on the Control Room's sick-call list so she could be allowed to meet with P.A. Clark, and checked on the Plaintiff a third time within 72 hours of being booked.

## II. Plaintiff Has Not Presented Legally Sufficient Evidence for a Reasonable Jury to Return a Verdict for Plaintiff and Against Duchesne County

In considering the foregoing Statement of Facts, including Duchesne County's actions in providing medical treatment to Plaintiff, Duchesne County was not, as a matter of law, deliberately indifferent to Plaintiff's serious medical needs. As such, the only way for Plaintiff to succeed in the suit is through the rare legal exception that has developed in a line of cases, including *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997), and *Crowson v. Wash. Cty. State of Utah*, 983 F.3d 1166 (10th Cir. 2020). Since the standards in *Tuttle*, *Brown*, and *Crowson* have not been satisfied, the Court should grant Duchesne County's Motion for Judgment as a Matter of Law.

*Estelle v. Gamble*, 429 U.S. 97 (1976), is a foundational case to *Tuttle*, *Brown*, and *Crowson* so it is considered here. In *Estelle*, an inmate sued prison officials for violating his Eighth Amendment rights after a bale of cotton fell on him while he was unloading a truck at the prison. *It.* at 99. The Court acknowledged that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id*. at 105.

However, the *Estelle* Court qualified their statement by adding "an inadvertent failure to provide adequate medical care" does not give rise to an Eighth Amendment violation. *Id*. at 105-06. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id*. at 106.

In *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), the Court considered whether a single isolated incident of excessive use of force by a police officer establishes an official policy or practice of a municipality, as required in *Monell v New York City Dept. of Social Services*, 436 U.S. 658 (1978), in such a way to make the municipality liable for damages for violating the victim's constitutional rights under 42 U.S.C. § 1983.

The Court held "the instructions allowed the jury to infer a thoroughly nebulous 'policy' of 'inadequate training' on the part of the municipal corporation from [a] single incident and at the same time sanctioned the inference that the 'policy' was the cause of the incident." *Tuttle*, 471 U.S. at 823. In addition, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by

an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. *Id*. at 823-24.

Here, it was undisputed at trial that prior to Plaintiff's heroin-withdrawal death in 2016, there had been no such deaths in the Duchesne County, or any county jail or prison in Utah or Wyoming. In this way, only one single isolated incident as spoken of in *Tuttle*, is in evidence. In addition, there was no evidence presented that Defendants' policy was unconstitutional. There was also no evidence that Defendants' policymaker, Sheriff Boren was deliberately indifferent to Plaintiff's serious medical needs in terms of failing to train employees.

Sheriff Boren ensured his new corrections officer candidates attended the State of Utah Corrections Academy and became certified corrections officers. He established and maintained a field training program ("FTO") for new officers. He reviewed and established all written policy. He held weekly command staff meetings where he coordinated, instructed and trained the supervisors in his office.

Sheriff Boren held monthly staff meetings with his employees where he instructed and trained corrections officers. He ensured each corrections officer received a minimum of 40 hours of in-service training each year and submitted those hours to Utah Police Officer Standards and Training, the certifying entity of corrections officers. He sent supervisors and many of the officers to Jail Administrator's Training where they became certified jail administrators. Each year he sent approximately one-third of his employees to the Utah Sheriffs' Association conference where they received jail specific, even medical specific training to do their jobs.

Sheriff Boren ensured his employees received continual on the job training and had informal conversations with them where he instructed and trained them. At trial, Sheriff Boren testified as to each of these training measures and Plaintiff provided no evidence to the contrary.

In *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997), the Court considered whether a single hiring decision by a county sheriff could become official policy attributable to municipal liability. The Court held it was not sufficient for Brown to simply identify conduct attributable to the County, such as the one-time hiring decision. *Id*. at 404-05. Instead, Brown needed to demonstrate that through the County's deliberate conduct, it was the moving force behind the injury and that municipal action was taken with the requisite degree of culpability. *Id*. The Court found that the lower courts failed to test the connection between the officer's background and the risk that, if he were hired, he would use excessive force. *Id*. at 412.

Here, it is undisputed that prior to Plaintiff's heroin-withdrawal death in 2016, there had been no such deaths in the Duchesne County, or any county jail or prison in Utah, thus no causal link to Defendants. More specifically, LPN Clyde called P.A. Clark and informed him of the Plaintiff's clonidine medication. Within 24 hours of entering the jail, LPN Clyde met with the Plaintiff and learned she had vomited and diarrhea. Within 48 hours, LPN Clyde met again with Plaintiff. Within 72 hours, LPN Clyde met with Plaintiff a third time. When LPN Clyde heard the symptoms continued, she informed the Plaintiff the P.A. would likely see her the next day and instructed her to submit a medical request so there was documentation.

In each interaction with LPN Clyde, the Plaintiff stated she knew her body and she was not detoxing. LPN Clyde provided the Plaintiff with Gatorade to ensure against dehydration. In addition, Defendant housed Plaintiff in a cell that had running water and a toilet. And corrections

11

officers checked on Plaintiff once per hour, as part of their regular security checks. The Plaintiff provided no fact evidence that contested the abovementioned facts at trial.

In *Crowson v. Wash. Cty. State of Utah*, 983 F.3d 1166 (10th Cir. 2020), the Tenth Circuit considered the district court's denied motions for summary judgment on the issue of qualified immunity by the jail doctor and nurse. The trial court concluded a reasonable jury could find both defendants were deliberately indifferent to the Inmate-Plaintiff's serious medical needs. *Id.* at 1173.

In addition, the Tenth Circuit considered the district court's denial of the County's motion for summary judgment. *Id*. As to the County, the trial court concluded a reasonable jury could find the alleged medical treatment failures were an "obvious consequence of the County's reliance on Dr. LaRowe's infrequent visits to the Jail and the County's lack of written protocols for monitoring, diagnosing, and treating inmates." *Id*.

After their review, the Court reversed and held neither the nurse, nor the doctor's conduct, violated the Plaintiff's constitutional rights. *Id*. at 1184-85. The Court continued:

> Our holding on Nurse Johnson's appeal is inextricably intertwined with the County's liability on a failure-to-train theory, so we exercise pendent appellate jurisdiction to the extent Mr. Crowson's claims against the County rest on that theory. *See Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995). However, under our binding precedent, our holdings on the individual defendants' appeals are not inextricably intertwined with Mr. Crowson's claims against the County to the extent he advances a systemic failure theory. *See id.* We therefore reverse the district court's denial of summary judgment to Nurse Johnson and Dr. LaRowe, as well as to the County on the failure-to-train theory, and we dismiss the remainder of the County's appeal for lack of jurisdiction.

*Id*. at 1174.

Importantly, the Court added "In *Martinez*, [] we went beyond *Olsen* in holding that a § 1983 deliberate indifference claim against a municipality based on systemic failures cannot

survive in the absence of a constitutional violation by at least one individual defendant. *Id*. at 1188 (*citing Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009) and *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir. 2002)).

Here, the Defendants include Duchesne County, Sheriff Boren, Jail Commander Jason Curry and LPN Clyde, all employees of Duchesne County, as well as P.A. Clark, an independent contractor of Duchesne County. Under *Crowson*, Duchesne County cannot, as a matter of law, be liable for failure to train, unless at least one individual defendant is determined to be deliberately indifferent to Plaintiff's serious medical needs. If not so, the claim against Duchesne County fails.

For the reasons detailed in previous analysis, notably the facts that were not in dispute at trial, Defendants' conduct does not rise to the level of deliberate indifference of Plaintiff's serious medical needs. As such, Plaintiff's failure to train claim against the County fails.

In *Lance v. Morris*, 985 Fd.3d 787, 800 (10th Cir. 2021), the Court provided the following three element test: "(1) the existence of a municipal policy or custom involving deficient training; (2) an injury caused by the policy that is 'obvious' and 'closely related'; and (3) that the municipality adopted the 'policy or custom with deliberate indifference' to the injury."

We note that in prior arguments, Plaintiff cited *Lance* as controlling law, particularly in a failure to train case. Importantly though, *Lance* is not a heroin withdrawal case, it facts opposite those at bar, namely that Lance voluntarily consumed the medication surreptitiously obtained from another inmate. In *Lance*, the medication voluntarily consumed caused the Plaintiff to have an erection that would not subside. Lance admitted to an officer he had taken another inmate's pill. Additionally, in *Lance* the Plaintiff alleged no jail employee came to check on him, so he requested

medical attention. These facts are vastly different from the heroin withdrawal case currently before the Court.

Here, LPN Clyde initiated contact with Plaintiff three times (regular contact made prior to the 24, 48 and 72 hour-marks of Plaintiff being booked). Moreover, Defendants helped Plaintiff complete a medical request, and placed Plaintiff's name on the Control Room appointment list so Plaintiff would be permitted to see the P.A. Had Plaintiff not suddenly and unexpectedly died, the P.A. would have seen her within 48 hours of submitting the medical request.

In *Lance*, Plaintiff made multiple medical requests, and candidly reported the unabated erection, intense pain, and the need for medical treatment. On the fourth day of the continuing problem, the jail nurse returned to work, examined Lance, and asked officers to take him a local hospital. Instead of transporting Lance to needed hospital, the officers obtained a judicial order releasing him on his own recognizance. Once released, Lance obtained his own urologist—a physician of his choice, received surgery and suffered permanent injuries for life.

Here, Defendants questioned Plaintiff about possible heroin withdrawal, but Plaintiff insisted she knew her body and she was not detoxing; she said she merely had the flu that she received from her roommate. The facts of the current case are detailed extensively here to thoroughly argue they are not only dissimilar to those in *Lance*, thus are not controlling law, but the facts of *Lance* and *Jensen* are in many critical ways opposite of each other.

### III. Defendants are Entitled Qualified Immunity

In considering the foregoing Statement of Facts, including Defendants' actions in providing medical treatment to Plaintiff, Defendants are, as a matter of law, entitled to qualified immunity.

In *Estate of Ceballos v. Husk*, 919 F.3d 1204 (10th Cir. 2019), the Court provided the test for qualified immunity. Calling it Plaintiff's "heavy two-part burden[,]" the Court stated:

> After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff. . . . . . The plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the right was sufficiently clear that a reasonable officer would understand that what he is doing violates that right.

*Id.* at 1213 (*quoting Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citations, internal quotation marks, alteration omitted)).

Here, Plaintiff cannot, as a matter of law, establish an alleged constitutional violation, against Defendants because of the undisputed facts presented at trial. After Plaintiff was booked into jail, LPN Clyde called P.A. Clark and informed him of the Plaintiff's clonidine medication. Within 24 hours of entering the jail, LPN Clyde met with the Plaintiff and learned she had vomited and diarrhea. Within 48 hours, LPN Clyde met again with Plaintiff. Within 72 hours, LPN Clyde met with Plaintiff a third time. When LPN Clyde heard the symptoms continued, she informed the Plaintiff the P.A. would likely see her the next day and instructed her to submit a medical request so there was documentation.

In each interaction with LPN Clyde, the Plaintiff stated she knew her body and she was not detoxing. LPN Clyde provided the Plaintiff with Gatorade to ensure against dehydration. In addition, Defendant housed Plaintiff in a cell that had running water and a toilet. And corrections officers checked on Plaintiff once per hour, as part of their regular security checks. The Plaintiff provided no fact evidence that contested the abovementioned facts at trial.

In regards to whether the claimed right was clearly established, it is helpful to consider, as the Court suggested in *Estate of Cellabos,* 919 F.3d 1204, the treatment measures a reasonable person in the officer's position may take. Substituting "LPN" for "officer" in the standard, the reasonable LPN in LPN Clyde's position in 2016 would likely not understand that treatment for an inmate withdrawing from heroin may include more than providing Gatorade, checking on the person regularly, providing food and water, and continuing their clonidine prescription.

Fact and expert witness testimony was received at trial that in 2016 corrections officers and corrections medical staff in Utah were unaware heroin withdrawal could cause death. In fact, no such deaths had occurred in any Utah jail or prison at that time. All of LPN Clyde's actions and medical treatment detailed above in this section are incorporated here. Because jail physicians, P.A.s, and corrections officers were unaware in 2016 that heroin withdrawal could cause death, a LPN in the Duchesne County Jail would likely also not understand that their then-regularly ordered measures for treating heroin withdrawal may lead to severe dehydration and death.

For these reasons, Plaintiff will likely not satisfy their heavy two-part burden of disproving qualified immunity. Thus, Defendants should be granted qualified immunity.

### IV. Punitive Damages

In considering the foregoing Statement of Facts, including Defendants actions in providing medical treatment to Plaintiff, Plaintiff is not, as a matter of law, entitled to punitive damages.

In *Brown v. Flowers*, 2023 U.S. App. LEXIS 27631 (10th Cir. 2023), the Court stated "[i]n a § 1983 suit, '[a] jury may be permitted to assess punitive damages in an action' if the plaintiff shows that the defendant's conduct is 'motivated by evil motive or intent, or when it involved a reckless or callous indifference to the federally protected rights of others." *Id.* at 14 (*citing*

*Eisenhour v. Weber Cty.*, 897 F.3d 1272, 1280 (10th Cir. 2018) (*quoting Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

Here, at trial there was no evidence presented of evil motive or intent on the part of Defendants, to violate any individuals' constitutional rights. Thus, Plaintiff is not entitled to punitive damages.

**WHEREFORE**:  Based on the foregoing, the Court should grant Duchesne County Defendants' Motion for Judgment as a Matter of Law.

Dated this 17th day of April, 2025.

*/s/ Jared W. Rigby*
Jared W. Rigby
Attorney for Duchesne County Defendants