Ryan B. Hancey, 9101
Adam L. Grundvig, 12106
KESLER & RUST
68 S. Main St., Ste. 200
Salt Lake City, UT 84101
Telephone: (801) 532-8000
rhancey@keslerrust.com
agrundvig@keslerrust.com
*Attorneys for plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **THE ESTATE OF MADISON JODY JENSEN, by her personal representative Jared Jensen,**<br><br>**Plaintiff,**<br><br>v.<br><br>**JANA CLYDE, an individual; LOGAN CLARK, an individual; and DUCHESNE COUNTY, a Utah governmental entity,**<br><br>**Defendants.** | **MOTION FOR ATTORNEY FEES AND COSTS THROUGH APRIL 30, 2025**<br><br>**Civil No. 2:17-cv-01031-DBB-DAO**<br><br>**Judge David B. Barlow**<br><br>**Magistrate Judge Daphne A. Oberg** |

Plaintiff Jared Jensen, personal representative of the Estate of Madison Jody Jensen (the "Estate"), respectfully moves for reasonable attorney fees and costs pursuant to DUCivR 54-2 and 42 U.S.C. § 1988(b).

## INTRODUCTION

Because the Estate prevailed on its § 1983 claims against Duchesne County and Jana Clyde (Dkt. 459), it is entitled to an award of reasonable attorney fees and costs against them. As discussed below, this Court should award the Estate $2,190,516.40

against Duchesne County and Ms. Clyde. This amount consists of $2,084,334.20 in attorney fees, $14,289.79 in taxable costs, and $91,892.41 in nontaxable costs.[1,2]

## STATEMENT OF FACTS

1. In September 2017, the Estate filed this case, asserting several interrelated claims based on Madison Jensen's 2016 detainment at the Duchesne County Jail (the "Jail"). *See* Dkt. 2.

2. During 2020 and 2021, this case was stayed pending interlocutory appeal. *See id.* 170, 192; *Est. of Jensen by Jensen v. Clyde*, 989 F.3d 848 (10th Cir. 2021).

3. In 2023, relying on changes in governing law, the Estate successfully moved for reversal of the Court's summary dismissal of the Estate's claims against Duchesne County. *See* Dkt. 255.

4. After a two-week jury trial, the jury reached a $15,007,508.45 verdict in the Estate's favor against Duchesne County and Jana Clyde. *See* Dkt. 455. Judgment based on that verdict entered on April 21, 2025. *See id.* 459.

## ARGUMENT

**This Court should award the Estate reasonable attorney fees of $2,084,334.20 and costs of $106,182.20 against Duchesne County and Jana Clyde.**

In the Tenth Circuit, "a prevailing plaintiff" in a § 1983 civil rights case "should ordinarily recover an attorney's fee" under § 1988(b). *Valdez v. Macdonald*, 66 F.4th 796,

---

[1] The declaration of Estate attorney Ryan Hancey supports this attorney fee and cost request.
[2] Under DUCivR 54-2(b), the Estate will file a separate Bill of Costs. This motion will serve as the memorandum supporting the Bill of Costs. *See Purple Innovation, LLC v. Responsive Surface Tech., LLC*, No. 2:20-CV-00708-RJS, 2025 WL 590309, *1 (D. Utah Feb. 24, 2025) (unpublished) (evaluating a motion for attorney fees and a bill of costs together).

836 (10th Cir. 2023) (discussing 42 U.S.C.A. §§ 1983, 1988(b)[3]). The plaintiff must demonstrate: (A) it was the prevailing party; and (B) the amount of fees requested is reasonable. *See Sims v. Young*, No. 123CV00053DBBJCB, 2023 WL 8083132, *2 (D. Utah Nov. 21, 2023) (unpublished); *Stella v. Cnty.*, No. 1:18-CV-00002-JNP, 2023 WL 5334427, *5 (D. Utah Aug. 18, 2023), *aff'd*, *Stella v. Davis Cnty.*, No. 23-4122, 2024 WL 4764694 (10th Cir. Nov. 13, 2024) (unpublished).

The prevailing party also is entitled to taxable costs awardable under § 1920[4] and nontaxable costs awardable under § 1988. *See Valdez*, 66 F.4th at 837.

A. <u>The Estate is the prevailing party.</u>

In this case, the Estate unquestionably is the prevailing party because the jury reached a verdict of more than $15,000,0000 in its favor on its § 1983 claims against Duchesne County and Jana Clyde. *See Stella*, 2023 WL 5334427, *5 (concluding "there is no question that Miller's Estate was the prevailing party" because "[t]he Estate was awarded $4.15 million in compensatory damages under § 1983"); Dkt. 459.

B. <u>The Estate's requested fees are reasonable.</u>

To calculate a reasonable attorney fee under what is referred to as a lodestar analysis, courts begin by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Valdez*, 66 F.4th at 836; *Sims*, 2023 WL 8083132, *2; *Stella*, 2023 WL 5334427, *5. The court may "adjust the fee upward" based

---

[3] "In any action or proceeding to enforce a provision of . . . 1983 . . . , the court . . . may allow the prevailing party . . . a reasonable attorney's fee . . . ." *See* 42 U.S.C.A. § 1988(b).
[4] Section 1920 states, among other things, that: "A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree." 28 U.S.C.A. § 1920.

on other considerations, such as the "results obtained." *See Valdez*, 66 F.4th at 836; *see also Stella*, 2023 WL 5334427, **10-12; *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1103 (10th Cir. 2010) (explaining courts may use the so-called "*Johnson* factors" to determine "subsequent ad hoc adjustments to the lodestar").[5]

> i. *The Estate's counsel expended a reasonable number of hours on this hotly contested, multi-party, nuanced civil rights litigation.*

To determine the proper number of hours expended in litigation, courts review the necessity of the hours and the extent of the attorney's billing judgment (i.e., the attorney's good faith effort to exclude excessive, redundant, or otherwise unnecessary hours). *See Valdez*, 66 F.4th at 836; *see also Sims*, 2023 WL 8083132, *2 ("To assess the reasonableness of an attorney's claimed hours, the court considers: (1) whether the hours are supported by adequate billing records; (2) whether the attorney has exercised billing judgment; and (3) whether the hours expended on each task are reasonable.").[6]

In cases involving "a common core of facts" or "related legal theories," the fee applicant may claim all hours reasonably necessary to litigate those claims. *Purple Innovation, LLC*, 2025 WL 590309, *7 (cleaned up). Moreover, "if a plaintiff has

---

[5] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Anchondo,* 616 F.3d at 1102; *Purple Innovation, LLC*, 2025 WL 590309, *6 n.73 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).
[6] Additional necessity of hours factors include: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) the potential duplication of services. *See Sims*, 2023 WL 8083132, *3.

achieved a significant result in the case, the Tenth Circuit instructs that it is legally incorrect for the court to reduce a fee request based on a plaintiff's partial success on interrelated claims." *Id.*

In this case, the amount of time the Estate's counsel spent is reasonable based on the factors articulated in *Valdez* and *Sims*. First, this was a complex and lengthy case where the legal landscape frequently evolved,[7] as this Court's reconsideration of Duchesne County's dismissal on summary judgment based on new law demonstrates. *See Stella.*, 2023 WL 5334427, *7 ("This dispute lasted five years, involved a motion for summary judgment, went up to the Tenth Circuit on interlocutory appeal, required extensive pre-trial motion practice, and ended in a jury trial. The supposition that this case was straightforward is, frankly, absurd.").

Second, the Estate's counsel pursued reasonable strategies that were largely successful, such as analyzing Jail employees' statements over time, moving for reconsideration of Duchesne County's summary dismissal, and moving to exclude defendants' experts. *See Purple Innovation, LLC*, 2025 WL 590309, *6 ("And Purple's attorneys—many with decades of experience—proved to be capable advocates on behalf of their client; their attention to detail enabled them to uncover Defendants' misconduct at arbitration and achieve a high degree of success on Purple's substantive claims[.]").

Third, the Estate's counsel generally succeeded at combatting opposing counsels' substantive motions and objections (e.g., nearly 20 motions in limine, including to

---

[7] Criminal proceedings involving Jana Clyde crept into this case, including because many persons who testified in that matter ultimately testified in the trial of this matter.

exclude the Estate's experts). *See Shaw v. Smith*, No. CV 19-1343-KHV, 2024 WL 1604627, *3 (D. Kan. Apr. 12, 2024) (unpublished) (recognizing counsel's "integrity, practicality, preparation and diligence in litigating").

Also, the Estate's claims involved a common core of facts (i.e., Madison Jensen's detainment and death at the Jail and the defendants' insufficient medical care) and related legal theories (i.e., deliberate indifference to serious medical needs). *See Stella*, 2023 WL 5334427, *6 (explaining "Plaintiffs' claims all arose from the same common core of facts—Miller's injury, Defendants' insufficient medical care, and Miller's resulting death" and "Though Plaintiffs did not prevail on all claims related to these facts, they are still entitled to attorney's fees for the hours properly billed on this case because their unsuccessful claims are closely tied to their successful claims"); *Purple Innovation, LLC*, 2025 WL 590309, *8 ("The court finds Purple's successful and unsuccessful claims raised overlapping factual issues.").

Finally, as the contemporaneously filed declarations and associated exhibits establish, the Estate's counsel kept adequate billing records, exercised billing judgment, and expended a reasonable amount of time on the necessary tasks.

    ii.    *The Estate's counsel's rates are reasonable.*

To determine the reasonableness of attorney rates, courts evaluate the market rates of attorneys with "reasonably comparable skill," and "experience in civil rights ***or analogous litigation.***" *Valdez*, 66 F.4th at 840. In this context, courts generally rely on sworn statements from practitioners, caselaw within the district, and its own experience. *See Sims*, 2023 WL 8083132, **6–7; *Stella*, 2023 WL 5334427, at **9-10.

Also, courts use hourly rates in effect at the time of the lodestar analysis (i.e., counsel's current rates), not the rates "in effect at the time the services were performed." *See Stoedter v. Gates,* 320 F. Supp. 3d 1265, 1280 (D. Utah 2018); *Raymond M. v. Beacon Health Options, Inc.*, No. 218CV00048JNPDAO, 2021 WL 764077, *3 (D. Utah Feb. 26, 2021) (unpublished); *Preitauer v. Am. Fam. Mut. Ins. Co., S.I.*, 741 F. Supp. 3d 934, 943 (D. Colo. 2024).

In the last several years, many Utah federal courts have concluded hourly rates much higher than $520 (the highest and current hourly rate of the Estate's lead counsel) were reasonable. *See Jensen v. Dudek*, No. 2:23-CV-036-DBP, 2025 WL 1114186, *1 (D. Utah Apr. 15, 2025) (unpublished) (recognizing the reasonableness of hourly rates as high as "$862.88" and determining a "$761" rate was reasonable); *Kenneth M. v. Colvin*, No. 1:20-CV-00045, 2025 WL 35570, *2 (D. Utah Jan. 6, 2025) (unpublished) (finding "$825.94" reasonable); *Stephen E v. Colvin*, No. 1:19-CV-00062, 2025 WL 35569, *2 (D. Utah Jan. 6, 2025) (unpublished) (finding "$714.56" reasonable); *Sec. & Exch. Comm'n v. Digital Licensing Inc.*, No. 2:23-CV-00482-RJS-DBP, 2024 WL 2728019, **4 n.42, 10 (D. Utah May 28, 2024) (unpublished) (recognizing the reasonableness of rates up to "$695" and finding "$590" reasonable); *John Bean Techs. Corp. v. B GSE Grp., LLC*, No. 1:17-CV-00142-RJS, 2023 WL 6164322, *25 (D. Utah Sept. 21, 2023) (unpublished) (finding "$643.50" reasonable); *Tony R. v. Dudek*, No. 2:24-CV-00242, 2025 WL 842793, *2 (D. Utah Mar. 18, 2025) (unpublished) (finding "$629.56" reasonable); *Ryan v. O'Malley*, No. 1:22-CV-0102-DBP, 2024 WL 2832540, *1 (D. Utah June 3, 2024) (unpublished) (finding "$600" reasonable); *Purple Innovation, LLC*, 2025

WL 590309, *7 (unpublished) (finding "$585" reasonable); *Beavers v. Saul*, No. 1:19-CV-00077-CMR, 2024 WL 3598996, *2 (D. Utah July 30, 2024) (unpublished) (finding "$574.47" reasonable); *Stella*, 2023 WL 5334427, *9 (D. Utah Aug. 18, 2023) (acknowledging evidence "that $450-$550 per hour . . . is a reasonable billing rate for" a § 1983 case); *DP Creations, LLC v. Zhang*, No. 222CV00693DBBJCB, 2024 WL 642963, *15 (D. Utah Feb. 15, 2024) (unpublished) (finding "$525" reasonable).

In this case, the Estate's core counsel consisted of experienced civil litigators with one to two decades of experience or more. *See, e.g.*, *Valdez*, 66 F.4th at 840 ("Mr. Pagliuca's affidavit showed that the partner-level attorneys had litigation experience analogous to other successful civil rights lawyers based on the partners' decades of criminal and civil trial experience."). Thus, their hourly rates ranging from $390 to $520 are consistent with the rates of experienced litigators in this district. The hourly rates of law clerks and associates ranging from $150 to $325 likewise are consistent with the rates of such personnel in this district.

    *iii.*    *The Estate is entitled to an upward deviation or enhancement.*

Based on the *Johnson* factors, the Estate is entitled to a 30% upward deviation from the lodestar calculation. First, there was always a substantial risk the Estate would not prevail on this contingency fee case due to the high legal standard and disputes of material fact. *See Stella*, 2023 WL 5334427, *10 (recognizing the difficulty of overcoming qualified immunity and demonstrating deliberate indifference).

Second, this case spanned nine years (2017-2025), including because of defendants' litigation strategy of appealing this Court's qualified immunity decisions. *See*

*id.* at *11 (explaining a case spanning between 2018 and 2023 had "dragged on longer than most," including because of interlocutory appeals and the COVID-19 Pandemic).

Third, the Estate's counsel achieved the excellent result of the highest civil rights verdict ever in the District of Utah. *See id.* (stating, in the context of an eight-million-dollar verdict: "[h]ere, Plaintiffs' counsel clearly obtained excellent results as Plaintiffs appear to have won the largest civil rights verdict ever in the District of Utah").

Fourth, this case should provide a public benefit by incentivizing correctional institutions to evaluate and improve their training standards. *See Stoedter*, 320 F. Supp. 3d at 1275 (recognizing judicial decisions that litigants' actions violated clearly established constitutional rights would "force police agencies to reevaluate officer training.") (cleaned up).

Finally, because the buying power of $1.00 in September 2017 has roughly the same buying power as $1.30 through March 2025, this Court should grant a 30% upward deviation to the Estate's requested attorney fee award. *See id.* at *11 (relying on this inflation-based methodology and concluding "20% reflects the inflation rate from the time of the complaint's filing to filing of the present motion"), *aff'd*, 2024 WL 4764694, *17; *see* U.S. Bureau of Labor Statistics CPI Inflation Calculator (screenshot below).[8]



---

[8] Available at https://www.bls.gov/data/inflation_calculator.htm (accessed April 29, 2025).

C. <u>The Estate's requested taxable costs are reasonable.</u>

A prevailing party generally is entitled to taxable costs, such as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, deposition transcripts or copies, and compensation of court-appointed experts. *See Valdez*, 66 F.4th at 837 (discussing Federal Rules of Civil Procedure 54(d)[9] and § 1920); *Purple Innovation, LLC*, 2025 WL 590309, **8-9.

In this case, the Estate seeks a taxable cost award of $14,289.79, consisting of costs such as filing fees, pleading and subpoena service costs, witness fees, postage, deposition transcripts, and some travel. *See* Decl. Ryan B. Hancey, ¶ 28.

D. <u>The Estate's requested nontaxable costs are reasonable.</u>

A prevailing party is generally entitled to nontaxable costs, which are reasonable expenses not absorbed as part of law firm overhead and normally billed to a private client. *See Valdez*, 66 F.4th at 837. Examples include expert fees and payments to discovery vendors. *See Purple Innovation, LLC*, 2025 WL 590309, *8.

In this case, the Estate seeks a nontaxable cost award of $91,892.41, consisting of expert fees and discovery vendor copying costs. *See* Decl. Ryan B. Hancey, ¶ 28.

## **CONCLUSION**

Based on the foregoing, this Court should award the Estate $2,190,516.40 against Duchesne County and Ms. Clyde. This amount consists of $2,084,334.20 in attorney fees, $14,289.79 in taxable costs, and $91,892.41 in nontaxable costs

---

[9] "Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

**DATED**: May 2, 2025.

            KESLER & RUST

            /s/ Ryan B. Hancey
            _____

            Ryan B. Hancey
            Adam L. Grundvig
            *Attorneys for plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that, on this 2nd day of May 2025, I caused to be delivered via the Court's electronic filing system a true and correct copy of the foregoing **MOTION FOR ATTORNEY FEES AND COSTS THROUGH APRIL 30, 2025** to all counsel of record.

            /s/ Victoria Mercer
            _____